UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────

MARLENE S. BROTHERS,

                          Plaintiff,

      v.                                                      5:23-cv-380
                                                                 (ECC/TWD)

CUNY INSURANCE GROUP of
CMFG LIFE INSURANCE COMPANY,

                          Defendant.

───────────────────────────────────

APPEARANCES:

Terry J. Kirwan, Jr., Esq., *for Plaintiff*
Katherine L. Villanueva, Esq., *for Defendant*

**Elizabeth C. Coombe, United States District Judge:**[1]

## MEMORANDUM-DECISION & ORDER

      Plaintiff Marlene S. Brothers (Plaintiff) commenced a state court action against Defendant CUNY Insurance Group of CMFG Life Insurance Company (Defendant) in Onondaga County, New York asserting a breach of contract claim arising out of benefits allegedly owed to Plaintiff pursuant to an accidental death and dismemberment insurance certificate issued to Plaintiff's deceased husband. Dkt. No. 2. Defendant removed the case to this Court asserting diversity jurisdiction. Dkt. No. 1. Presently before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. No. 33. The motion is fully briefed. Dkt. Nos. 34, 35. For the following reasons, Defendant's motion is granted.

---

[1] This case was originally assigned to Senior United States District Judge Thomas J. McAvoy and has been reassigned to the undersigned.

II.  **FACTS**

    B.  **Relevant Background and Facts**[2]

        1.  **The Policy**

On April 1, 2005, Defendant issued an Accidental Death & Dismemberment certificate (the Certificate) to Plaintiff's husband, Arthur Brothers. Def. SUMF ¶ 1. Plaintiff is the beneficiary of the Certificate, and "benefits . . . are payable as soon as [Defendant] receive[s] proper proof sufficient to determine liability." Affidavit of Anne Coates (Coates Aff.) Exs. 1 and 4; Def. SUMF ¶ 5.

As relevant to this action, the Certificate covers accidental death, that is "[d]eath resulting from an injury." Def. SUMF ¶ 2. The Certificate provides the following definitions: (1) "injury" is "[b]odily damage or harm which: (a) is caused directly by an accident and independently of all other causes; and (b) occurs while a covered person's insurance is in force under [the] certificate," *Id.* at ¶ 3 (emphasis removed), and (2) "accident" is "[a]n occurrence with unintended, unexpected or unforeseen results." *Id.* at ¶ 4.

        2.  **Facts**

Mr. Brothers died on August 23, 2022, at age 86. Def. SUMF ¶ 6. At the time, he had medical conditions including end-stage renal disease and essential hypertension. *Id.*; Coates Decl. Ex. 2 at 2.[3] On September 26, 2002, Plaintiff submitted a claim regarding Mr. Brothers's death,

---

[2] The facts are drawn from the parties' submissions, including Defendant's Statement of Undisputed Material Facts (Def. SUMF), Dkt. No. 33-1, and Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Pl. Resp. SUMF), Dkt. No. 34-2, to the extent that they are well-supported by citations to the record, and the exhibits the parties have submitted, to the extent they are admissible as evidence. The facts are construed in the light most favorable to Plaintiff as the non-moving party. *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

[3] Citations to court documents use the pagination generated by CM/ECF, the Court's electronic filing system.

2

asserting that (1) Mr. Brothers fell at home on July 15, 2022 (the Fall); (2) the Fall led to his August 23, 2022 death; and (3) Mr. Brothers was hospitalized from July 15, 2022 through his death on August 23, 2022.  *Id.* at ¶¶ 7, 8, 13.  The medical records indicate that no one saw Mr. Brothers fall, and he had a history of falls.  *Id.* at ¶ 10 (citing Coates Aff. Ex. 5 at 16, 2, 6).  The medical records do not indicate that Mr. Brothers was injured as a result of the Fall.  *Id.* at ¶ 11 (citing Coates Aff. Ex. 5 at 2, 13, 16); *see also* Coates Aff. Ex. 5 at 5 (discharge summary after Mr. Brothers' death stating that "[w]hile hospitalized he was noted to have a fall with reported hip pain.  MRI at that time not indicating fracture however joint effusion.  An attempt was made at aspirating joint effusion while patient was hospitalized.").  Mr. Brothers "was being treated for essential hypertension, end-stage renal disease treated by hemodialysis (that started in December 2018), coronary artery disease, anemia, and malnutrition."  *Id.* at ¶ 12 (citing Coates Aff. Ex. 5 at 2, 3).  In addition, he had "recurrent falls as far back as May 2020 per review of record."  *Id.* at ¶ 12; Coates Aff. Ex. 5 at 2, 3.

Mr. Brothers was admitted to Auburn Community Hospital on July 15, 2022, and he was discharged to the Van Duyn Center, a skilled nursing facility, on August 12, 2022.  Def. SUMF ¶ 13 (citing Coates Aff. Ex. 5 at 18, 5, 3).  When Mr. Brothers was transferred to the Van Duyn Center, he was "medically stable."  *Id.* at ¶ 13 (quoting Coates Aff. Ex. 5 at 15).  According to medical records, on July 24, 2022, there was "discharge planning difficulty with finances necessary for transportation from rehab to hemodialysis," and a social worker was "actively involved in discharge planning."  Coates Aff. Ex. 5 at 16; Def. SUMF at ¶ 13.

The death certificate states that the "manner of death" was "natural cause," and the "immediate cause of death" was "acute renal failure" "due to or as a consequence of" "end chronic stage renal disease" and "chronic essential hypertension."  Coates Aff. Ex. 2 at 2. The death

certificate also states that "other significant conditions contributing to death but not related to cause" of death are "recent accidental fall at home, dementia, coronary artery disease." *Id.*

Defendant denied Plaintiff's claim because it concluded that Plaintiff had not established coverage under the Certificate. Def. SUMF ¶ 16. Plaintiff "possesses no documents relating to Mr. Brothers' history of falls for the time period of April 1, 2005, to August 23, 2022," and "possesses no documents relating to any care provided to Mr. Brothers (both medical and non-medical) from August 23, 2019, to August 23, 2022." *Id.* at ¶ 18.

### 3. Marlene Brothers' Declaration

Plaintiff, who worked as a registered nurse and then as "a school nurse teacher" for more than 30 years before retiring in 1995, assisted Mr. Brothers with his medical needs and describes his health issues as "manageable." Marlene Brothers' Declaration (Brothers Decl.) ¶¶ 5-6, Dkt. No. 34-1. Mr. Brothers' "last fall at the home was over two (2) years prior to his death, on May 20, 2020," and Plaintiff is "unaware of any seizure disorder, and [she] never once saw him undergo a seizure." *Id.* at ¶ 6.

Mr. Brothers "suffered a life-altering, and eventually fatal, fall on July 15, 2020" in his home. Brothers Decl. ¶ 7. After Mr. Brothers came home from his dialysis appointment on July 15, 2025, Plaintiff greeted him, talked with him, and observed that he was "alert, oriented, and normal." *Id.* She went upstairs and, a few moments later, heard a crash and then immediately rushed downstairs where she found Mr. Brothers unconscious on the family room floor. *Id.* She never saw Mr. Brothers "frothing at the mouth, despite the inaccurate history in Arthur's medical records," and she "never reported to anyone that Arthur was frothing at the mouth at any time." *Id.* She immediately called a neighbor, who called 911. *Id.* at ¶ 8.

Before the Fall, Plaintiff "observed Arthur to be interactive, alert, happy and not at immediate risk of suffering from any episode that would cause his death," but after the Fall, Plaintiff "personally observed the acute decline in Arthur's health caused by the Fall," and Mr. Brothers "never regained the ability to walk, feed himself, bathe himself, go to the bathroom himself, dress himself, and perform other activities of daily living, all things that he performed perfectly well prior to the Fall." Brothers Decl. ¶¶ 9, 10. Plaintiff "personally observed the acute decline in Arthur's health caused by the Fall." *Id.* at ¶10.

### III.   STANDARD OF REVIEW

Under Rule 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an

essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

## IV.   DISCUSSION

Plaintiff asserts a claim for breach of contract because Defendant improperly refused to pay her death benefits under the Certificate following Mr. Brothers' death. *See* Compl. ¶¶ 17-21. Defendant argues that it is entitled to summary judgment because Plaintiff "has not – and cannot – submit proof to establish that Mr. Brothers experienced an accident – much less that it caused his death" as would be necessary to establish that the death was accidental. Dkt. No. 33-2 at 5. Plaintiff responds that "the observations of [Plaintiff], a trained registered nurse and the person

who spent the most time with [Mr. Brothers]," at the very least" establishes that "a question of fact exists as [to] the precise cause of . . . death." Dkt. No. 34 at 8. Defendant replies that "Plaintiff's unsupported, conclusory statements disputing the information in the . . . medical records, and death certificate are insufficient to preclude summary judgment in [Defendant's] favor." Dkt. No. 35 at 6.

"The beneficiary of an insurance policy bears the burden of proving that the death of the insured was covered by the terms of the policy." [4] *Lachter v. Ins. Co. of N. Am.*, 145 A.D.2d 540, 541 (2d Dep't 1988) (citation omitted)); see *Parauda v. Encompass Ins. Co. of Am.*, 188 A.D.3d 1083, 1085 (2d Dep't 2020) ("it is the insured's burden to establish the existence of coverage" under an insurance policy) (citation omitted)); *Lumbermens Mut. Cas. Co. v. Flow Intern. Corp.*, 844 F. Supp. 2d 286, 302 (N.D.N.Y. 2012) ("'[T]he insured bears the burden of showing that an insurance coverage covers the loss . . . .'") (quoting *MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 158 (2d Cir. 2011)).

The Certificate requires Plaintiff to establish that Mr. Brothers suffered an accidental death, that is a "[d]eath resulting from an injury," where injury is "[b]odily damage or harm which . . . is caused directly by an accident and independently of all other causes," and accident is "[a]n occurrence with unintended, unexpected or unforeseen results," Def. SUMF ¶¶ 2, 3, 4.

"In order to determine whether an occurrence is an accident, one must look to the casualty from the viewpoint of the insured and determine whether it was unexpected, unusual and unforeseen." *Lachter*, 145 A.D.2d at 541 (citation omitted). *See also Saint Calle v. Prudential Ins.*

---

[4] The parties recognize that New York substantive law applies in this diversity action. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("federal courts sitting in diversity apply state substantive law and federal procedural law").

*Co. of America,* 815 F. Supp. 679, 687-88 (S.D.N.Y. 1993) (same) (quoting *Lachter,* 145 A.D.2d at 540). "Whether an occurrence constitutes an 'accident' is generally for the trier of fact to determine." *Lachter*, 145 A.D.2d at 541 (citation omitted). Whether an occurrence is the cause of a death may also be a question for a jury to determine. *See id.* (concluding that the question of whether "the occurrence caused the insured's death" was a question for the jury) (citations omitted).

Although a preexisting condition does not necessarily bar recovery, the New York Court of Appeals has drawn a distinction between "a morbid or abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of mischief" that "may fairly be described as a disease or an infirmity" and a condition "so remote in its potential mischief that common speech would call it not disease or infirmity, but at most a predisposing tendency." *Silverstein v. Metropolitan Life Ins. Co.*, 254 N.Y. 81, 83 (1930)); *see also McCarthy v. Am. Int'l Grp., Inc.,* No. 99-cv-1645, 2012 WL 4369874, at *5 (E.D.N.Y. Sept. 24, 2012) (citing as examples of the application of this distinction *Sugarman v. New England Mut. Life Ins. Co.*, 201 F. Supp. 759 (E.D.N.Y. 1962) (recovery denied when death was as likely result of dormant aneurysm as fall); *McMartin v. Fid. & Cas. Co.*, 264 N.Y. 220 (1934) (recovery denied for death resulting from the combined effects of automobile accident and pre-existing progressive kidney disease); *with Bernstein v. Am. Home Assurance Co.*, 59 A.D.2d 615 (2d Dep't 1977) (recovery not barred where the insured had a harmless, pre-existing "bleb" on his left eye that made him more susceptible to an infection caused by the unforeseeable depositing of animal matter on that eye); *Amend v. Equitable Life Assurance Co.*, 73 Misc. 2d 402 (Civ. Ct. 1972) (recovery not barred where static, asymptomatic aneurysm and injury from accident both contributed to insured's death). In other words, "if the bodily condition is not of itself capable of doing significant mischief

. . . it does not preclude recovery. . . ." *McCarthy*, 2012 WL 4369874, at *5 (quoting *Sugarman*, 201 F. Supp. at 762 and citing *Ajnoha v. JC Penney Life Ins. Co.*, 480 F. Supp. 2d 663, 675 (E.D.N.Y. 2007)).

Here, even assuming that Plaintiff could establish that the Fall was an accident because it was unexpected and unforeseen, she has not presented sufficient evidence for a reasonable factfinder to conclude that the Fall was the independent and direct cause of death. Defendant provided a death certificate that is certified by the New York Commissioner of Health as a true copy of the record on file in the Office of Vital Statistics, Onondaga County, Syracuse, New York. Dkt. No. 33-5. Under New York law, a "properly certified death certificate is prima facie evidence of the facts stated therein." *Fiorentino v. TEC Holdings, LLC*, 78 A.D.3d 766, 767 (2d Dep't 2010) (citing NY Pub. Health L. § 4103(3); NY CPLR § 4520).

Here, the death certificate states that the "immediate cause" of death was "renal failure" due to "end stage renal disease" and "essential hypertension." Dkt No. 33-5. The Fall is noted in the "other significant conditions contributing to death but not related to" the cause of death. *Id.; see also id.* (noting "recent accidental fall at home, dementia, coronary artery disease").

The medical records are consistent with the cause of death in the death certificate. The medical records indicate that: (1) before the Fall, Mr. Brothers had been diagnosed with end-stage renal disease and was receiving dialysis; (2) the Fall did not result in an any significant injury; (3) Mr. Brothers was "medically stable" when he was discharged from the hospital to a skilled nursing facility eleven days before his death; and (4) his death was more than one month after the Fall. Def. SUMF ¶¶ 6, 7, 8, 11, 13.

Plaintiff's contrary assertion—that Mr. Brothers "suffered a life-altering, and eventually fatal, fall on July 15, 2022," Brothers Decl. ¶ 7,— is a medical conclusion that the Fall, not the

9

chronic diseases identified as the cause of death on the death certificate and described in the medical records, caused Mr. Brothers' death. As an initial matter, Plaintiff has not presented any medical evidence supporting that conclusion, and such a broad conclusory allegation without factual support is not sufficient to rebut Defendant's prima facie evidence of the cause of death. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("the presentation of assertions that are conclusory" does not create a "genuine issue" of material fact); *Dorsey v. Artus*, No. 9:09-cv-1011(GLS/DEP), 2013 WL 5463720, at *8 (N.D.N.Y. Sept. 30, 2013) ("conclusory, self-serving affidavits that are unsupported by any factual detail are insufficient to give rise to a dispute of material fact.") (citations omitted); *see also Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case.").

In addition, to the extent Plaintiff seeks to rely on her own testimony to support her conclusion, her testimony would be limited to lay testimony because she did not give any expert notice. Although the Second Circuit has broadly interpreted the scope of permissible lay opinion testimony under Federal Rule of Evidence 701,[5] "witnesses who testify to opinions 'based on scientific technical, or other specialized knowledge' must be qualified as experts under Rule 702." *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, No. 05-5155, 2010 WL 741971, at *1 (E.D.N.Y. Feb. 23, 2010) (citing Fed. R. Evid. 701, Advisory Comm. Note (2000); *United States v. Garcia,* 413 F.3d 201, 211 (2d Cir. 2005)). In addition, "[a]ccording to the Advisory

---

[5] Rule 701 of the Federal Rules of Evidence states:

> If a witness is not testifying as an expert testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception, (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

Committee what separates expert and lay testimony is that 'lay testimony results from a process of reasoning *familiar in everyday life,*' whereas 'expert testimony results from a process of reasoning *which can be mastered only by specialists in the field.*'" *In re WorldCom, Inc. Sec. Litig.*, No. 02-cv-3288, 2005 WL 675601, at *2 (S.D.N.Y. Mar. 24, 2005) (citation omitted).

Here, Plaintiff's testimony would have to provide a basis for a jury to conclude that the death was "caused directly by the accident and independently of all other cause." Def. SUMF ¶ 3. Although expert testimony is not always necessary to establish causation, it is normally required. *See Colson v. Mingo*, No. 18-cv-2765, 2025 WL 688832, at *3 (S.D.N.Y. Mar. 4, 2025) ("To be sure, causation in complex medical cases tends to require the testimony of an expert witness.") (citing *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) ("Where . . . the nexus between the injury and the alleged cause would not be obvious to the lay juror, expert evidence is often required to establish the causal connection between the accident and some item of physical or mental injury.") (internal citations and quotation marks omitted)); *Young v. Southwest Airlines Co.*, 409 F.Supp.3d 110, 114 (E.D.N.Y., 2017) ("'[T]he medical effect on the human system of the infliction of injuries is not generally within the sphere of the common knowledge of the lay person.'") (quoting *Barnes v. Anderson*, 202 F.3d 150, 159 (2d Cir. 1999) (additional citation omitted)).

"[E]xpert testimony is not necessary to establish causation . . . when the finder of fact 'must draw only a common sense causal connection between a plaintiff's injury and one precipitating cause.'" *Gyllenhammer v. Am. Nat'l Red Cross*, No. 3:15-cv-1143 (BKS/DEP), 2017 WL 11295795, at *1 (N.D.N.Y. Nov. 16, 2017) (quoting *Doe v. Doe*, No. 16 Civ. 0332, 2017 WL 3025885, at *7 (S.D.N.Y. July 14, 2017) (quoting *Young v. Sw. Airlines Co.*, No. 14 Civ. 1940, 2017 WL 1247921, at *3 (E.D.N.Y. Feb. 3, 2017)). On the other hand, "'[e]xpert medical opinion

evidence is required when the subject-matter 'is presumed not to be within [the] common knowledge and experience' of the jury.'" *Id.* (quoting *Jimenez v. Supermarket Serv. Corp.*, 01 Civ. 3273, 2002 WL 662135 at *4 (S.D.N.Y. Apr. 22, 2002) (quoting *Fane v. Zimmer, Inc.*, 927 F.2d 124, 131 (2d Cir. 1991))).

When deciding whether expert testimony is required to establish causation, courts have considered whether "an injury has multiple potential etiologies," "the complexity of the injury and the likelihood that an ordinary person would come in contact with such an injury." *Kaganovich v. McDonough*, 547 F. Supp. 3d 248, 276–77 (E.D.N.Y. 2021) (quoting *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) and *Jaquez v. Flores*, No. 10-cv-2881, 2016 WL 1267780, at *3 (S.D.N.Y. Mar. 30, 2016)).[6]

Here, Plaintiff's conclusion that the Fall caused her husband's death would require evidence based on scientific, technical, or other specialized knowledge to tie the events together and establish causation. This is particularly true because (1) the Fall did not cause any significant

---

[6] For example, "a lay witness with experience could testify that a substance appeared to be blood, but [ ] a witness would have to qualify as an expert before he could testify that bruising around the eyes is indicative of skull trauma." *Kaganovich,* 547 F. Supp. 3d at 276-77 (citing Fed. R. Evid. 701 Advisory Committee's note, 2000 amend.). "Similarly, when a doctor says 'the plaintiff was coughing and running a fever,' he offers lay testimony, but when he says 'he diagnosed the patient as having Reactive Airways Dysfunction Syndrome caused by exposure to a toxic chemical,' he speaks as an expert. *Id.* (quoting *Walker v. Spina*, Civ. 17-0991, 2019 WL 145626, at *21 (D.N.M. Jan. 9, 2019)) (quoting Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 701.02[7] (10th ed. 2011)). "Similarly, a doctor offers lay testimony by saying a patient broke a leg from being hit by a car, experienced hearing loss from repeated exposure to loud noises or felt dizzy and nauseous from inhaling paint fumes." *Id.* (citing *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 89 (2d Cir. 2006) (internal citations and quotation marks omitted)). "Only expert testimony, however, could describe the 'link between benzene exposure and squamous cell carcinoma,' or opine on whether a plaintiff's injuries were caused by a plane's hard landing or her 'long history of similar medical ailments.'" *Id.* (quoting *Tufariello*, 458 F.3d at 89 and *Young v. Sw. Airlines Co.*, 409 F. Supp. 3d 110, 115 (E.D.N.Y. 2017) and citing *Pierce v. City of New York*, 16-cv-5703, 2017 WL 2623857, at *2 (E.D.N.Y. June 16, 2017) (because treating physicians were not disclosed as experts, they could not 'offer an opinion as to causation and distinguish between the effects of [plaintiff's] unrelated injuries versus the effects of the . . . incident' at issue).''

injury, (2) Mr. Brothers was hospitalized from the Fall through his death, (3) his condition was "stable" when he was moved to the skilled nursing facility 11 days before his death, and (4) he had pre-existing conditions that were reported as the cause of death on his death certificate. Under these circumstances, testimony about the cause of death requires specialized knowledge because the question of whether the Fall was an independent basis for the death is beyond the sphere of the ordinary juror. *See, e.g., Kaganovich*, 547 F. Supp. 3d at 276–77 (concluding that "treating physicians may offer "lay testimony" within strictly limited bounds, including relevant examinations they performed, diagnostic testing they may have ordered, their observations of him during examinations, any related history they may have recorded and simple conclusions that would be obvious to jurors, but excluding the causation of his ailments and any claimed relationship to his underlying conditions"); *Gyllenhammer*, 2017 WL 11295795, at *2 (finding that "Dr. Van Gorder's diagnoses—chondromalacia of the patellar status post-contusion, synovitis, chondral lesion consistent with arthritis (knee), and anterior labral tear (shoulder)—are not of the sort where a jury may infer causation simply due to the obvious connection between the trauma alleged and the injury itself.")

At a trial Plaintiff would therefore be limited to describing her observations about Mr. Brothers' conduct and demeanor immediately before the Fall as well as her observations that his functioning substantially declined after the Fall. Even viewing the evidence in the light most favorable to Plaintiff, that testimony alone would not be a sufficient basis for a reasonable juror to determine that the Fall itself was the independent cause of death where (1) the Fall did not cause any significant injury, (2) Mr. Brothers was hospitalized from the Fall through his death, (3) his condition was "stable" when he was moved to the skilled nursing facility 11 days before his death,

and (4) he had pre-existing conditions that were reported as the cause of death on his death certificate.

Given Plaintiff's failure to present any medical evidence or expert opinion contradicting the cause of death found in the death certificate and the medical records, even viewing the evidence in the light most favorable to her, she cannot rebut the conclusion that Mr. Brothers died as a result of natural causes and not because of the Fall. *Cf. McCarthy v. Am. Int'l Grp., Inc.*, No. 99-cv-1645, 2012 WL 4369874, at *7 (E.D.N.Y. Sept. 24, 2012) (concluding that Plaintiff has not established "that his pre-existing back condition was not a substantial cause of his disability or that it was a harmless condition that simply pre-disposed him to suffer a disabling injury" and that "the evidence supports a finding that, under *Silverstein*, plaintiff's back condition was a pre-existing disease known to the plaintiff at the time he entered into the contract with defendant. Consequently, recovery is barred under New York law"); *Bozic v. JC Penny Life Ins. Co.*, 295 A.D.2d 460, 461 (2d Dep't 2002) (affirming summary judgment for the insurance carrier where plaintiff filed a claim for accidental death benefits where "[t]he uncontroverted medical evidence in the record demonstrated that the decedent's underlying cirrhosis of the liver at the time of the accident was a disease which contributed to her death. Under such circumstances, the insurer is relieved of liability") (citations omitted); *Schwartz v. Hebrew Acad. of Five Towns*, 39 A.D.3d 1134, 1135–36 (3d Dep't 2007) (concluding that the finding of the Workers' Compensation Board should not be disturbed because "claimant failed to present any medical evidence contradicting the cause of death as found by the physician and referenced in the death certificate," and the death certificate was sufficient to presume compensability).

Plaintiff's reliance on *Hoyt v. John Hancock Mut. Ins. Co.*, 48 Misc. 2d 935 (Sup. Ct. 1966) is misplaced. In *Hoyt*, plaintiff, who had a rheumatic heart condition, died five minutes after his

14

heart was cut during a procedure to drain fluid from his pericardial sac. *Id.* at 936-37. The *Hoyt* court concluded that the death was accidental because cutting plaintiff's heart during the procedure "would have caused death to a normal person" without an underlying condition. *Id.* at 938.

The Fall here was very different than the cut in *Hoyt*. Unlike *Hoyt,* Mr. Brothers' medical records do not indicate that his death was caused by the Fall independent of his underlying medical conditions or that the Fall caused a significant injury that could have caused his death. Def. SUMF at ¶ 11. Defendant is therefore entitled to summary judgment on Plaintiff's breach of contract claim.

Defendant is also entitled to summary judgment on Plaintiff's declaratory judgment cause of action because of the summary judgment on her breach of contract claim.

## IV.    CONCLUSION

For the forgoing reasons, Defendant's motion for summary judgment, Dkt. No. 33, is **GRANTED**, and Plaintiff's Complaint, Dkt. No. 2, is **DISMISSED** in its entirety. The Clerk is respectfully directed to enter judgement accordingly and close this file.

**IT IS SO ORDERED**.

Dated: December 1, 2025

_____
Elizabeth C. Coombe
U.S. District Judge